BAILEY and others *vs.* THE WESTERN VERMONT RAILROAD COMPANY.

The plaintiffs agreed to ship to the defendants 5500 tons of railroad iron, 500 in June, 1851, 2500 in July, and 2500 in August, as nearly as practicable. In consideration of which the defendants agreed to pay $35 per ton for said iron, together with the freight and duties; and they were to give their notes for each parcel of iron that should be shipped, at six, eight and ten months, on receiving each bill of lading. No iron was shipped in June, and only part of the specified quantity was shipped in July, and only a part of what was required in August was shipped in that month; and only 2900 tons were shipped previous to the 25th of October, 1851. The 2900 tons were received by the defendants. No excuse was shown for not delivering the iron in due time; nor was there any proof that the defendants made any objection on account of its not being delivered in due time; nor that they made any protest against this delay; nor that they asked for the prompt delivery of the remainder. But, having received the iron without objection, they neglected to give their notes, from that time until April, 1852, when suit was brought. *Held,* that the defendants, by accepting a part of the iron out of time and without objection, waived that portion of the contract which required that part to be delivered in due time, or admitted that it was delivered as soon after that time as practicable. That in either case they were bound to give their notes; and that, having neglected to do so, this discharged the plaintiffs from their obligation to deliver the rest of the iron until the defendants should tender their notes for the portion delivered; and entitled the plaintiffs to commence a suit, without tendering a delivery of the rest of the iron, although the time for the delivery of the whole was past before the suit was brought.

THIS was a motion by the defendants for a new trial, upon a bill of exceptions. The action was brought by the plaintiffs, who were partners doing business at Liverpool, England, under the firm of Bailey Brothers & Co., upon a contract entered into between them, through their agents, and the defendants through their president and agent, Myron Clark, in writing, on the 3d of May, 1851. By that agreement the plaintiffs sold and agreed to deliver to the defendants 5500 tons of iron rails of 2240 pounds, which were to be shipped from Great Britain to New-York in the quantities and as nearly as practicable at the times following, viz: five hundred tons in all June then next, twenty-five hundred tons in all July then next, and twenty-five hundred tons in all August then next. In consideration of which the defendants agreed to pay to the plaintiffs $35 per ton of said iron, and on

Bailey *v.* The Western Vermont Railroad Company.

its arrival at New-York, to pay the duties thereon. The said sum of $35 per ton was to be paid as follows : the amount of freight and primage on said rails in cash as per bill of lading or charter party specified, and at the times the freighters should have the right to require it; and for the balance of said $35 the payments were to be made for the amount of each cargo or parcel of said rails, in the notes of the defendants, made payable to their own order, in the city of New-York, in equal proportions, at six, eight and ten months from the date of each bill of lading, with interest, except the sum of $10,000 which was to be paid in the defendants' notes at four months from the date of the bill of lading of the first shipment of said rails, with interest. All notes, under this contract, were to be delivered to the plaintiffs' agents, on presentation of the bill of lading to the defendants. In security for the payment of said notes the defendants were to place " in collateral" with each note their seven per cent bonds, secured by a mortgage on their road, &c., at the rate of twenty-five per cent discount; that is, for every $100 of notes, $125 of bonds. The defendants further agreed and bound themselves, that in case the plaintiffs' agents should, at any time during the existence of said notes, prefer to return the said collateral bonds and take the individual guaranty of the board of directors for the payment of said notes, they would, on request, substitute in the place of said bonds the individual guaranty of the directors, for the prompt payment of each note made in settlement for said 5500 tons of rails.

The complaint, after setting out this agreement, alleged that in pursuance and performance of said contract, on divers days between the 1st day of July, 1851, and the 30th day of December, in the same year, the plaintiffs sold and delivered to the defendants, and the defendants received and accepted from them, divers large quantities of iron rails, of the quality and description mentioned in the contract, amounting in weight to 2942 tons, 4 hundred weight, 3 quarters and 4 pounds ; and that at the time of the delivery of each of the said quantities the plaintiffs presented and delivered to the defendants the bill or bills of lading for the same, according to the terms of the contract.

That the price or value of the iron rails so delivered to and accepted by the defendants, at the rate of $35 per ton, amounted in the whole to the sum of $102,978.38. That after deducting all payments made by the defendants, for or on account of the iron rails so delivered to and accepted by them, there remained due from them to the plaintiffs the sum of $80,328.91, with interest. That the plaintiffs had, by their agents, frequently applied to and demanded from the defendants the promissory notes of the defendants for the several sums, making up the amount so due and owing by them to the plaintiffs, and unpaid as aforesaid, according to the said contract, and had also required and demanded of the defendants, to place as security for the said notes, and in collateral therewith, the bonds of the defendants, mentioned in said contract, to an amount sufficient to satisfy the provisions in that behalf contained in said contract; but that the defendants had wholly neglected and refused, and still neglected and refused, to give their notes for the several sums making up the amount so due and owing, or for any of them, or any part thereof, or to place their bonds in security for the same, or for any part thereof, as required by the said contract. That by means of such neglect and refusal of the defendants, the plaintiffs had sustained damages to the amount of $80,328.91, besides interest on the several amounts making up that sum, to which they were entitled under and by virtue of said contract. Wherefore the plaintiffs demanded judgment against the defendants for $80,328.91, with interest thereon from the 29th day of August, 1851.

The defendants, by their answer, admitted the making of the contract set out in the complaint, and that they had received from the plaintiffs the quantity of iron therein stated, between the 18th day of July and the 17th day of October, 1851, but they denied that the plaintiffs sold and delivered to the defendants, or that the defendants received and accepted from them in pursuance and performance of the said contract, or that the plaintiffs presented and delivered to the defendants, or that the defendants received and accepted from the plaintiffs the bill or bills of lading for the same, according to the terms of said con-

tract and in performance thereof. But on the contrary, the defendants alleged that by the terms and provisions of said contract, the plaintiffs were to ship fifty-five hundred tons of iron rails on board vessels in Great Britain bound to sail to the port of New-York, in the quantities and as nearly thereto as practicable at the times following, to wit: Five hundred tons in all June, 1851; twenty-five hundred tons in all July, 1851, and twenty-five hundred tons in all August, 1851; and that the plaintiffs, disregarding their said contract, did not ship fifty-five hundred tons of iron rails in the quantities, and as nearly thereto as practicable, at the times mentioned in said contract. That the plaintiff did not ship five hundred tons in all, or any part thereof, in the said month of June, or as near thereto as practicable. That of the twenty-five hundred tons which were to be shipped in all in the said month of July, the plaintiffs only shipped in said month, to wit, the eighteenth day thereof, one hundred and ninety-three tons six hundred weight and fifteen pounds. And of the twenty-five hundred tons in all which were to be shipped by said plaintiffs in the month of August, 1851, the plaintiffs, up to the nineteenth day of said month, only shipped to the defendants eight hundred seventy-five tons, ten hundred weight three quarters twenty-two pounds; and up to the first of September, 1851, only seven hundred and ninety-nine tons, three hundred weight two quarters and twenty-four pounds; and that the plaintiffs only shipped as aforesaid, on the seventeenth day of October, 1851, the further quantity of one thousand seventy-four tons and seven hundred weight of said iron rails. And that in all, or nearly all of these instances, they shipped by vessels which actually did not sail from Great Britain till some time after said iron rails were shipped. That by reason of the non-performance of said contract on the part of the plaintiffs, the defendants were compelled from necessity to receive the said nine hundred and forty-two tons, four hundred weight three quarters and four pounds of iron rails; but the same was expressly received under a protest by and on the part of the defendants that the iron rails had not been shipped conformably to the contract; for which delay the defendants claimed the right to such damages

as they might sustain from the delay in sending the iron rails forward, or for their failure to ship them as early as the plaintiffs agreed. That the defendants in no manner received said iron rails, or bill or bills of lading for the same, in performance or part performance of said contract; nor did they waive or agree to waive the strict performance of said contract, by and on the part of plaintiffs; nor did the defendants, at the several times of receiving the said quantity of iron rails, agree to pay for them at the rate of $35 per ton, or any other price. And the defendants denied that by reason of the premises they legally owed or were bound to pay the plaintiffs the sum of $80,328.91, with interest, according to the terms of said contract.

For a further defense the defendants alleged, that before and at the time of so entering into and executing the aforesaid contract with the plaintiffs, the defendants were constructing, under and by virtue of their act of incorporation, the Western Vermont Railroad, and were prosecuting the construction of said road with the intent and design to fully complete the same in the fall of 1851, (as was known to the plaintiffs through their said agents,) so that from and after this period the defendants could and would transport passengers and freight for hire over said road from one end thereof to the other; and that in order so to complete said road and receive the profits thereof, the defendants so entered into the said contract with the plaintiffs, to the tenor and effect as above stated, that the plaintiffs should ship fifty-five hundred tons of iron rails, being the quantity required for the construction of said road, and of certain dimensions as specified in said contract; which iron rails were to be shipped on board vessels in Great Britain bound to sail to the port of New-York in the quantities, and as nearly thereto as practicable at the times, as above stated; and that in consideration of the agreement so contained on the part of the plaintiffs, the defendants agreed in said contract to pay for each ton thereof the sum of $35, and on its arrival at the port of New-York to enter the same at the custom house, and pay the duty thereon at their own cost and for their own account, in addition to said thirty-five dollars per ton. And the defendants further alleged, that though

they kept and performed all and every part of said contract, to be so kept and performed on their part, yet the plaintiffs did not so keep and perform on their part; but on the contrary, they did not ship from Great Britain the said fifty-five hundred tons of iron rails on board vessels bound to the port of New-York, in the quantities, and as nearly thereto as practicable, at the times specified in the contract; and that the plaintiffs only shipped the quantities as above stated, and at the times as above stated. And that by reason of said breach of contract, on the part of the plaintiffs, the defendants were compelled to purchase, and did so purchase, in order to construct in part said railroad, one thousand tons of iron rails, at an additional expense over the contract price of said iron rails of about two thousand dollars, and of a different pattern, and requiring different chairs and other fixtures and preparations, which subjected the defendants to large additional expense and much trouble, and had proved to be and was a permanent injury to said railroad ; and were also compelled to purchase, and did so purchase, another one thousand tons of iron rails, of a different pattern, and requiring other fixtures and preparation at a great additional expense, which last quantity of iron rails, through the repeated promises of the plaintiffs that their iron rails would arrive, or that they would purchase other iron rails for the defendants, remained unshipped till so late a period in the fall of 1851 that the same was frozen up in the Hudson river, and did not reach the defendants in the fall of 1851, by means whereof the defendants also suffered great loss and damage in this behalf; and by reason of the premises and of these several additional expenses, and the losses and trouble consequent upon the purchase of these several purchases of iron and the additional expenses and the losses and trouble consequent thereupon, the defendants had sustained a loss amounting to about the sum of ten thousand dollars, which they would insist upon recouping on the trial of this action against the alleged claim of the plaintiffs. And the defendants further alleged, that by reason of the said breach of contract, on the part of the plaintiffs, the defendants became and were unable to complete said Western Vermont Railroad in the fall of 1851,

whereby they had lost the use and benefit of said road from the fall of 1851, and during a period of about six months, for the carrying of passengers and freight for hire, and were otherwise greatly damaged. And that they had suffered a loss, and been damaged by reason of not being able to complete said road as aforesaid, to an amount not less than thirty thousand dollars; and the defendants believed, and so charged, that the damages would greatly exeeed this amount; which sum, or whatever amount of damages they had suffered and sustained in this behalf, they would insist, upon the trial of this action, to recoupe against the alleged claim of the plaintiffs on said contract. And the defendants further alleged, that relying upon the performance of said contract on the part of the plaintiffs, and upon their repeated assurances to furnish said iron rails, accompanied with their often expressed wishes that the defendants should not obtain the said iron rails of any other person or persons, or elsewhere, the defendants were induced to look, and did look to the plaintiffs for the performance of said contract, until it was too late in the season of 1851 to obtain the said iron rails elsewhere for the construction of said road within the time as aforesaid; and they alleged that all of the aforesaid damages had occurred to them by the non-performance of said contract, by and on the part of the plaintiffs, and their conduct and acts in that behalf.

The plaintiffs put in a reply, denying most of the matters set up in the answer as a defense. They alleged that there was no other contract or agreement entered into between the plaintiffs and the defendants, in respect of the matters mentioned in the complaint and answer, except the contract set forth in the complaint, and that all the terms and provisions of said contract were therein set forth. They denied, that by reason of any nonperformance of the said contract on the part of the plaintiffs, as alleged in said answer, the defendants were compelled from necessity to receive the said 2942 tons, 4 cwt. 3 qrs. and 4 lbs. of iron rails, or that the same were received under such protest as alleged in the answer. But on the contrary, the plaintiffs averred that the iron rails so delivered to the defendants were received by them in performance of said contract, and that, at

Bailey *v.* The Western Vermont Railroad Company.

or since the receipt thereof, the defendants had promised and agreed to pay the plaintiffs therefor, at the rate or price set forth in said contract.

And the plaintiffs alleged, that except as to giving the note for ten thousand dollars at four months from the date of the first shipment of the iron rails delivered to the defendants, and the payment of the freight and primage on the rails so delivered, the defendants did not observe, perform or keep all or any part of the contract so entered into by them with the plaintiffs, or of the agreements and stipulations on their part therein contained; but on the contrary thereof, that the defendants made default in the performance of the said contract, and violated the same and the agreements on their part therein contained, in manner set forth in the complaint; and the plaintiffs claimed and insisted that by reason of such breach and violation of the said contract by the defendants, they, the plaintiffs, were not bound or obliged further to perform or keep the said contract on their part, or to deliver to the defendants any further or greater quantity of iron rails than the quantity so delivered to the defendants as aforesaid; and that by such breach and violation of the said contract by the defendants, the plaintiffs were discharged from all further performance thereof, and that they were not bound or obliged to pay or make good to the defendants the damages alleged in said answer to have been sustained by the defendants, or any part thereof.

On the trial, the defendants moved for a nonsuit; which motion was denied. The court directed the jury to find a verdict for the plaintiffs for $94,636.38, being the amount of their claim and interest; and the jury found a verdict accordingly.

*Wm. Curtis Noyes & C. O'Cônor*, for the plaintiffs.

*H. Ketchum*, for the defendants.

*By the Court*, MITCHELL, P. J. The plaintiffs agreed to ship to the defendants 5500 tons of iron, 500 in June, 1851, 2500 in July, and 2500 in August, if it were practicable within that time. The defendants agreed to give their notes for each parcel of iron that should be shipped, on receiving each bill of

lading.   The iron was not shipped in June, and only part of what was required was shipped in July, and part of what was required, in August; and by the 25th of October only 2900 tons were shipped.   All the 2900 tons were received by the defendants.   There is no proof to show any excuse for not delivering the iron in due time—no proof that the defendants made any objection to its not being delivered in due time—nor that they made any protest against this delay; nor that they urged or asked for the prompt delivery of the rest.   But it appears that, having received the iron without any objection, they neglected to give their notes from that time until April 24, 1852, when the action was brought.   The defendants, by accepting part of the iron out of time and without objection, waived the part of the contract which required that portion to be delivered in due time, or admitted that it was delivered as soon after that time as practicable.   In either case they were bound to give their notes.   They neglected to do so.   This discharged the plaintiffs from an obligation to deliver the rest of the iron until the defendants should furnish their notes for the portion delivered, and entitled the plaintiffs to commence a suit for the notes which should have been given, without tendering a delivery of the rest of the iron, although the time for the delivery of all was past before the suit was brought.

The contract may not be rescinded by the omission of the defendants to give their notes; but the obligation of the plaintiffs to deliver the iron is suspended by that omission.   Take a familiar case, and similar to this, as an illustration.   A builder agrees to erect a house for a certain sum, to be paid by installments; a certain part of the sum when the first tier of beams is on, another certain part when the second tier of beams is on, and so on, throughout the work.   He finishes the house so far as to have the first and second tier of beams on, and the owner refuses to pay him; he waits patiently for his money until the time elapses when the whole house should have been completed, and then sues for the sums to be paid under the contract when the first and second tiers of beams should be on.   The owner denies his liability, because the whole house was not finished in

due time, and appeals to the laws of New-York, as deciding that he never shall be liable for what was done for him, although he was in fault in neglecting to pay as the contract required, and that neglect would probably prevent the builder being able to complete. Such a defense could never be sustained.

This case differs from that only because in this the iron was not delivered in due time. But it is conceded that the acceptance of the iron by the defendants waived the objection as to time. That being so, the first fault, and the continuous fault, is in the defendants, in not giving their notes, and makes this case precisely like the one proposed.

If a servant is employed for a year at $120 per annum, to be paid in equal monthly installments, and leaves his employer before the year is out, because he is not paid the installments due, can he not recover at the end of the year for those installments? If a tenant hire a house for a year at a certain sum, payable in equal quarterly payments, and he is evicted, after the end of the third quarter, by his landlord, is the eviction any defense for the installments of rent previously due? A contract to pay for land by installments, and for a delivery of the deed when the last installment shall be due, is different, because there the consideration on one side cannot be and is not intended to be divided into parcels; and there it is properly decided, that if the vendor do not sue until the last installment fall due, he must aver a tender of the deed. But a different principle would apply, if the contract were to buy 100 different lots of land and to pay for each lot whenever a deed for that lot should be tendered. If the title were to fail as to one lot, the vendor could, even after the time for the delivery of all was expired, recover for the ninety-nine lots conveyed, and justice would be done in allowing him damages for the non-delivery of the deed as to the one lot

It was said that the law opposes the splitting up of actions, and that accordingly, if a bond be payable by installments and the plaintiff sues after the last installment is due, and claims for only the prior installments, he cannot recover afterwards for the last. In the case of a bond the judgment is for the penalty, which covers the whole cause of action, and prevents a new re-

covery, except under statutory regulations. If the rule supposed would apply to a covenant in one deed as to matters to be done at different times, and for considerations distinctly applicable to each thing to be done, it would be on the ground that the law would presume that no other breaches of the covenant existed, except such as were alleged in the first action, if they could have been alleged in that action. But that rule would not prevent the plaintiff, even after all the time had expired, from suing and recovering for certain breaches of the covenant; he showing that he had omitted to perform the subsequent parts of the agreement for which the defendant was to pay him a further amount fully equivalent to what he was to do, because the defendant had, by his refusal to perform the prior parts of the agreement, disabled the plaintiffs from proceeding further in the contract, or because the defendant had thus excused the plaintiff from proceeding further in it. The neglect of the defendants to give their notes for the iron delivered to them constituted such an excuse in this case. The answer admits that the iron was received and accepted by the defendants. This may be read at the trial as an unqualified admission of a fact, and has there all the incidents of such an admission. The answer then denies that the iron was received *under the contract*, but substantially states that it was received under a protest. This is matter which the defendants are to prove, and they cannot read their answer to prove it. The fact of the acceptance of the iron being admitted, and there being no proof how it was accepted, the law implies that it was received as a satisfactory compliance with the contract, as to the part delivered, and a waiver of any objections as to its not having been delivered in due time.

Even if there were a protest that the defendants should not be bound to pay for the part delivered, if the rest should not be delivered in a reasonable time thereafter, that protest would not exonerate the defendants from liability to give their notes, pursuant to the contract, for the part actually delivered. They should have given their notes, and protested that they would not hold themselves liable on them, nor excuse the past delay, nor accept or pay for the rest of the iron, but would claim damages

for all breaches of the contract unless the rest of the iron should be duly delivered. The decisions of this state are principally relied on by the defendants. Their authority controls this court; but they contain no principle contrary to what is here stated. If there is an entire contract, and no payment to be made by the defendants until the whole contract be completed, the decisions in this state are strict, and do not allow a recovery for the part performed. But that is because the bond is so. The parties have chosen, by their agreement, to say that payment shall be made only when all is completed. Here the bond is not so ; the parties have prudently chosen to say that payment shall be made as the parcels are shipped. The principle of both decisions is the same—that the parties may be a law to themselves, and that the courts will carry out their contracts as they make them.

Judgment should be entered for the plaintiffs.

Judgment accordingly.

[NEW-YORK GENERAL TERM, June 1, 1854. *Mitchell, Roosevelt* and *Clerke,* Justices.]