(21 App. Div. 492.)

## LACKAWANNA MILLS v. WEIL et al.

(Supreme Court, Appellate Division, First Department. October 22, 1897.)

1. SALES—ACCEPTANCE—TENDER OF GOODS—SUFFICIENCY.

     Under a contract for the sale of goods to be delivered in lots as required by the buyer, the buyer was notified that the goods were ready, and were stored subject to his orders. Thereafter certain lots were delivered and accepted, but later he refused to receive another lot that the seller tendered upon his order. *Held* that, if the goods were up to the contract, such refusal was a breach, and the seller was not required to tender delivery of the rest of the goods.

2. SAME—TIME FOR PAYMENT—INTEREST.

     By the original contract of sale of goods to be delivered in lots as required by the buyer, the goods were to be ready for delivery on June 1st, and to be paid for June 10th. After delivery of certain lots, there was, on August 5th, an understanding between the parties that the buttons on the undelivered goods should be changed by the seller, and this was done. Lots were delivered and accepted on August 14th and 19th, but goods ordered August 19th, of which delivery was tendered on August 25th, were rejected. On the question of the date from which interest was to be computed, *held*, that this depended on whether the goods were ready for delivery, according to the contract standard, on June 1st, and the modification of August 5th was a mere gratuitous concession by the seller, or whether the modification of August 5th was an adjustment of an honest difference of opinion as to the requirements of the contract.

3. SAME.

     In the latter case the date of payment would be fixed by the time when the seller was ready to deliver according to the modified agreement.

Appeal from special term.

Action by the Lackawanna Mills against Samuel Weil and others. From a judgment entered on a verdict in favor of plaintiff, and from an order denying a new trial, defendants appeal. Modified.

The action was brought to recover the price of 1,800 dozen knit undershirts and drawers, alleged to have been sold by the plaintiff to the defendants on September 25, 1890, less the sum of $3,000, paid on account of the price. The goods were to be ready for delivery by the plaintiff upon the defendants' orders on the 1st day of June, 1891. On that date, the complaint alleges, the goods were ready for delivery, and the plaintiff so notified the defendants; that the plaintiff has actually delivered to the defendants, on their order, and the defendants have received and accepted, a portion of said goods; that the plaintiff has offered to deliver the balance, but that such tender was refused. The making of the contract for the quantity of goods specified is admitted by the answer, but it is by way of defense alleged, among other things: (1) That the shirts and drawers were to correspond in all respects to a sample exhibited by the plaintiff to the defendants at the time of the sale, and that the shirts and drawers were to correspond in all respects to certain knit shirts and drawers manufactured by the plaintiff for the defendants in 1890, and then known and called by the plaintiff "No. 423"; (2) that the whole quantity was to be ready for delivery to the defendants in the city of New York on June 1, 1891; (3) that the defendants were to pay for the goods on June 10, 1891. The answer further denies that the goods were to be ready for delivery by the plaintiff upon the defendants' orders on the 1st day of June, 1891, and also denies that the plaintiff had the goods ready for delivery on that date, or notified them that it was ready to deliver prior to June 28, 1894. It is further alleged that the goods did not correspond with the requirements of the agreement of sale, and that the plaintiff never offered to deliver to the defendants goods that correspond to such requirements. The answer contained further denials, and also several counterclaims; but these it is unnecessary to mention, because the questions raised upon this appeal by the appellants relate to the

strength of the plaintiff's case, and to errors claimed to have been committed by the learned trial judge in rulings upon evidence, and in his charge to the jury, and refusals to charge as requested by the defendants. Further facts are stated in the opinion, and also in the opinion of the general term upon the former appeal. Lackawanna Mills v. Weil, 78 Hun, 348, 29 N. Y. Supp. 114.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

B. F. Einstein, for appellants.

A. A. Spear, for respondent.

O'BRIEN, J. One ground relied upon by the appellants for the reversal of the judgment is that the learned trial judge erred in denying the motion to dismiss the complaint at the close of the plaintiff's case. The merits of this position necessarily involve an examination of the facts as to whether or not, as contended by the defendants, the plaintiff defaulted in the performance of its contract on June 1, 1891, and failed to give notice to the defendants of readiness to perform within a reasonable time after August 5, 1891. It appeared upon the trial that on May 12, 1891, the plaintiff sent to the defendants an invoice of the 1,800 dozen, amounting to $16,200, and thereafter delivered to the defendants eight cases, the last two on August 19, 1891; that on July 2, 1891, the plaintiff wrote the defendants that they had packed and stored at the mill, subject to their order, the 57 cases which were then undelivered. A controversy arose between the parties as to whether or not the goods which had been delivered corresponded to the terms of sale. The defendants claimed that the shirts and drawers were sold by sample, and upon the agreement that they should correspond to similar goods manufactured by the plaintiff for the defendants, and delivered in 1890, under No. 423, and that the goods did not correspond to the sample or to No. 423 in the respect, among others, that the shirts and drawers of No. 423 had four-hole pearl buttons, and that those of No. 424 (which are the goods in controversy) had two-hole buttons. On August 5, 1891, the parties had a conference, the result of which was that the plaintiff allowed the defendants $60 in settlement of the claim for wrong buttons on four cases which had been delivered between June 22 and August 1, 1891, and it was agreed that the 840 dozen of shirts then undelivered should be altered so as to have four-hole instead of two-hole buttons.

The question whether this was a gratuitous engagement on the part of the plaintiff, or was undertaken as the result of reasonable objections of the defendants, based upon the fact that there was a difference between the goods sought to be delivered and those required by the contract, was, among others, referred by the learned trial court to the jury. Upon the plaintiff's evidence, however, as it stood at the close of the case when the motion to dismiss was made, it was not so favorable to the defendants that the judge would have been justified in granting the motion, because, in addition to what appeared, as already cited, it was also shown that the goods were all manufactured, packed, and ready for delivery in February, 1891; that they were invoiced to the defendants May 12, 1891; that the contract required that they should be ready for delivery June 1, 1891, and

should be actually delivered in small lots as ordered by the defendants after that date, and should be paid for June 10th. On July 2d, as already stated, notice was given to the defendants that the goods were stored subject to their order. The defendants seemed to recognize the correctness of this procedure by repeatedly ordering those goods shipped; and, in the Lampman order of July 19th, they direct the plaintiff to ship "cases that you are holding subject to our order as under noted." On August 5th the difference had been settled, and the only change made in the original contract was that in regard to the change of buttons; and that, for the moment, may be considered as a modification of the contract. All the goods shipped after August 5th had changed buttons, and all the goods ordered by the defendants had either been actually delivered or tendered, and none were returned. Finally, although they had received goods on August 14th and 19th, and had not returned them, they refused to receive or admit into their store goods ordered on the 19th which were tendered to them on August 25th. There is evidence tending to show that, at the time of this tender and refusal to receive, the buttons had all been changed; the testimony being that within one or two days after Lampman's visit to the mills, on August 19th, all the changes as to buttons had been made. However this may be, the rejection of these goods without examination was at the defendants' risk. If such goods corresponded with the requirements of the contract, such refusal to receive constituted a breach on the defendants' part, which made it unnecessary for the plaintiff to make any further tender. It was not required to ship all the remaining cases from Scranton to New York for the purpose of offering them to the defendants, so that they might reject them. It was sufficient that the goods were ready for delivery and stored subject to the defendants' orders.

In Van Sickle v. Nester, 34 Hun, 64, the rule is well stated in the following language:

"If the plaintiff drew to the defendant a load of barley, and tendered it upon the contract, and the barley in all respects corresponded with that required by the terms of the contract, and the defendant refused to accept it, it cannot be that the rule is that the plaintiff must continue day after day to draw other loads to the defendant, and have them refused, until he has drawn and tendered the whole amount required by the contract. Such a rule would be a hardship and unjust. The defendant, by refusing to accept, was guilty of a breach of the contract, and this breach dispensed with the necessity of the plaintiff's offering to deliver the rest. If there had been no breach of the contract on the part of the defendant, if the barley was not of the quality required by the contract, then he had a right to refuse to accept, and it would have been the duty of the plaintiff to have purchased and delivered the other barley. But upon this question the evidence is conflicting. It was submitted to the jury, and the jury have found in favor of the plaintiff."

See, also, Canda v. Wick, 100 N. Y. 127, 2 N. E. 381; Howe v. Moore (Sup.) 14 N. Y. Supp. 236.

Upon the question of the plaintiff's ability or willingness to perform, there was in the case, at the time the motion was made, evidence from which the jury might infer, as they subsequently did, that the plaintiff delivered or offered all goods ordered by the defendants, by having the balance called for by the contract in storage subject to the defendants' orders; the stored goods being, as the jury have de-

termined, up to the requirements of the contract. Had the defendants changed their minds subsequent to August 25th, and become willing to accept goods, they should have communicated that change of mind to the plaintiff by at least sending an order for more goods.

The question of law of course arises, not as to the right of the plaintiff to recover at all, not as to the right to go to the jury upon the question of the amount of damages, but as to when the payment became due, so as to set the interest running; and this is to be determined by the consideration of whether the plaintiff is entitled to recover upon the original contract, or such contract as modified by the agreement of August 5th, or, as held by the learned trial judge, whether the recovery should be for the balance due upon the entire contract, with interest from July 1, 1891, the date of the last payment. The date of payment, however, is not controlling upon the motion to dismiss, this latter requiring us to review the evidence with a view to determining whether there was sufficient testimony from which the jury could properly infer that the plaintiff was entitled to recover. We think, as did the learned trial judge, that there was ample evidence, and that it would have been error to grant the motion to dismiss. And upon the question of the plaintiff's right to recover, upon the whole case, it could not have been stated in any fuller or clearer way than in the charge of the learned trial judge, wherein he told the jury:

"Now, if you find that the goods which the plaintiff had ready for delivery on June 1, 1891, did in fact correspond to goods No. 423 of 1890, both with regard to the buttons and general workmanship, this question of subsequent alteration would not be material, since the plaintiff's offer to alter them would have been merely gratuitous; but if the original contract required four-hole buttons on both the shirts and drawers, and, after the defendants had given the plaintiff an opportunity to correct the defect in the goods, it did correct the defect only in the shirts, there would then have been a breach of contract upon the plaintiff's part, and it could not recover. But, again, if the contract only called for four-hole buttons on the shirts, and the plaintiff did remedy the defect in this regard under an agreement with the defendants, which called for no further alteration, and tendered the goods so altered within the time allowed by this modification of the contract, then there would have been a fulfillment by the plaintiff; and, if the goods were otherwise correct, the defendants could not claim a breach of contract because the buttons were not satisfactory on June 1st, the original date for delivery."

The trial judge thus clearly distinguished the different aspects of the case, depending upon the view which the jury might take of the evidence, and left it for them to determine, upon the conflicting evidence, the question as to when the payment became due. If the plaintiff was not in fault, and had in all respects complied with the contract, and if the goods which it had completed and held subject to the defendants' order were in respect to the buttons and general workmanship in accordance with the ·contract, and then subsequently agreed, with a view of avoiding any dispute and of buying its peace, to comply with the defendants' demand in reference to changing the buttons, and after that the defendants, without right and unreasonably, refused to accept, the jury might well infer that their position was not one of good faith, and that they were seeking an excuse to recede from their contract; and in that event, there being no failure of the plaintiff to perform, it was entitled to receive payment ac-

cording to the terms of the contract, so that, in that aspect, fixing July 1st as the date did not injure the defendants.

Under the terms of the contract, the goods were to be ready for delivery on June 1, 1891, and, if required by the defendants, were to be actually delivered to them in the city of New York within a few days thereafter. The date of payment for the goods was fixed by the contract for June 10, 1891. It follows that, if the goods had been ready for delivery on June 1st, payment would have become due and' enforceable on June 10th. If, however, we conclude that an honest difference of opinion arose as to whether the goods were equal in quality of workmanship to those ordered, and that this difference was adjusted by the modified agreement of August 5th, it would follow that as the goods were to be changed with respect to the buttons, and as such change was not made until some days after August 19th, the date of payment would be fixed by the time when the plaintiff was ready to deliver the goods as provided in the modified agreement. Assuming, therefore, as the jury had a right to do, that the goods tendered and refused on August 25th were in all respects up to the terms of the contract, and that on that date all the changes had been made in the balance of the goods, that, it seems to us, should be the date when payment for the goods became due; for, in the language of the opinion upon the former appeal (78 Hun, 349, 29 N. Y. Supp. 115), "under its contract with the defendants, full performance on its part was to precede payment by the defendants." It will thus be seen that we do not agree in the view taken by the appellants, that the learned trial judge erred in charging the jury as follows:

"Now, if you find that these goods, as offered on August 25th, were actually in accordance with the requirements of the contract as originally made or as subsequently modified, both in regard to the general workmanship and the form of the buttons, then there was a proper offer of delivery by the plaintiff, and the defendants' refusing to accept these ten cases constituted a breach of contract upon their part, such as excused the plaintiff from making any further offer of the goods."

In view of this charge, which we think was right, it is difficult to understand how the learned judge fell into the error of fixing the date when payment was due as of July 1st, which, as he says, was the time when the last payment was made by the defendants to the plaintiff. Concluding, as we do, therefore, that the date when payment for the goods became due was not July 1st, but August 25th, it will make a difference in interest; and to that extent the judgment should be modified.

It is true that, by their answer and in support of their counterclaims, the defendants sought to show that the words "Delivery June 1st, 1891," meant absolute delivery on that date, and that the failure so to deliver to the defendants in New York is fatal to any recovery as of such date. Upon the trial, however, it was testified by one of the plaintiff's witnesses, without objection or exception, that the words "Delivery June 1st, 1891," meant that the goods were to be baled up and ready for delivery on the 1st of June, at the option of the buyer; and this testimony is enforced by the interpretation given to the contract by the parties themselves with respect to the delivery

of the goods, because none were actually delivered until the latter part of June, and all deliveries were made as ordered from time to time up to August 19, 1891. The question, however, as to the meaning of these words, was submitted to the jury, and their verdict sustained the plaintiff's contention that actual delivery of the goods on June 1st was not contemplated.

The appellants insist that notice of the completion of the contract and the readiness of the plaintiff to perform should have been given within a reasonable time after August 5, 1891. While we may assent to this as a proposition of law, we cannot, for the reasons already stated, agree with the view taken by the appellants of the evidence that the only notice that the plaintiff gave was on June 28, 1894, nearly three years after the contract was modified, because the failure of the defendants to receive the goods on August 26, 1891, absolved the plaintiff from the necessity of making any further tender. Of course, there was a conflict as to whether defendants were justified in refusing to accept, but this has been resolved by the jury adversely to them.

It would unnecessarily extend this opinion to refer to the numerous exceptions taken by the defendants to the rulings upon evidence, and to the charge of the judge; it being sufficient to say that we have examined them, and find them wanting in that force which requires this court to set aside a judgment entered upon a verdict which was rendered by the jury after a protracted trial, and after every question was fully and fairly presented by the judge in his charge, and in a manner as favorable to the defendants as they had a legal right to demand.

We think that, with the modification suggested,—allowing interest from August 25, 1891, instead of from the date allowed in the computation by the jury,—the judgment should be affirmed, without costs. All concur.