(40 Misc. Rep. 96.)

### PITTS et al. v. DAVEY.

(Supreme Court, Trial Term, Montgomery County. February, 1903.)

1. CONTRACT—BREACH.

Plaintiffs contracted with a middleman for the delivery of certain cement made by a particular company in weekly installments for a period of about 4½ months. At the time of the first delivery they notified him not to deliver any more until further notice. *Held* to constitute a breach preventing performance of the contract, where such agent would have been able to fulfill it had plaintiffs not interfered.

2. SAME—PERFORMANCE.

Where plaintiffs agreed to take of defendant middleman certain cement in weekly quantities, and thereafter notified him not to deliver, but subsequently requested him to resume delivery, which he did, he was not liable, when ultimately he became unable to complete, for the extra cost of the cement, which plaintiffs had to buy elsewhere, but he can recover of them the value, at the contract price, of the deliveries he made after their default.

Action by John L. Pitts and others against Fred Davey. Judgment for defendant.

Henry V. Borst, for plaintiffs.
White & Ferguson, for defendant.

KELLOGG, J. A fair interpretation of the contract is that the defendant was to sell and deliver to the plaintiffs 5,000 barrels, more or less, of Ironclad cement, which the plaintiffs might require to fill their contracts with the railroad company at Amsterdam, Degraff, and Hoffmans. The deliveries were to be 500 barrels January 1, 1902, 300 barrels January 15th, and 250 barrels per week thereafter,

at either of said places, as the plaintiffs from time to time might designate, the cement to be subject to the inspection of the railroad company's inspector. At the time of the contracts the plaintiffs knew that the defendant had not the cement; that this brand of cement was made only by the Glens Falls Company; and that the defendant, acting as a middleman, was obtaining it from that company by a contract then being made with the said company to fill this contract. The statement in the contract that the defendant is to "insure" the delivery has reference to his character as middleman. December 30th plaintiffs wrote the defendant not to ship any cement until further notice, except the 500 barrels due January 1st. The 500 barrels were then in course of shipment, and this letter remained unanswered. March 11th the plaintiffs requested the delivery of 500 barrels at Hoffmans that month and 500 barrels in April. March 31st they wrote defendant not to ship the cement ordered for April until further notice. From time to time the defendant shipped to the plaintiffs all the cement ordered, concededly until June 1st, and, in fact, until June 20th. The plaintiffs notified the defendant the inspector would not accept the two car loads shipped May 31st. They were nevertheless used, but tests were thereafter made June 7th and 14th by the company as to their quality. Three car loads shipped June 13th, 16th, and 17th the plaintiffs notified the defendant the inspector would not accept as a compliance with the specifications, and in the latter part of July these cars were actually accepted and used by the plaintiffs as complying with the specifications. The defendant had not failed in delivering cement as ordered until he was notified the inspector would not accept these three cars, and then the Glens Falls Company refused to ship any more cement to the plaintiffs until the tests were made, and it was determined whether the cement was satisfactory or not, claiming that it was so pressed with orders at the mill that it could not have the cement held up. From that time until after these three cars were accepted, about August 4th, the defendant was not able to obtain from the mills the cement required by the plaintiffs.

Plaintiffs having notified the defendant and he in turn the mill that five car loads of cement were not accepted, it was not unreasonable for the Glens Falls Company to refuse to send other cement until it was determined whether their cement would pass this inspector or not. The cement was in fact according to the contract and specifications, but as the Glens Falls Company was the only company making this particular cement, and it was the only cement of that kind, if it was not to be accepted there was no use of sending on other installments. The contract being made with reference to this cement, the provisions therein for inspection excused the plaintiffs from taking the cement unless it passed inspection, and if it did not pass inspection and was the regular product of that mill it probably excused the defendant. The failure to pass inspection was a contingency which both parties had in mind as possible, and if it failed there was probably no further liability of either party upon the contract for cement not already delivered. Dolan v. Rodgers, 149 N. Y. 489, 44 N. E. 167.

After these three cars were accepted the mills furnished in August about 750 barrels to the plaintiffs, but in September it is conceded that with the use of his best efforts the defendant was unable to obtain the cement from the mills. In fact at that time the market was so congested that it was not possible to fill the orders of the plaintiffs as made, and there was a general scarcity of cement in the market, and the mills were behindhand in their orders. At the time the contract was made the Glens Falls Company had sufficient cement, and had arranged to comply with the terms of plaintiffs' contract, and the cement would have been delivered at the times and in the manner provided for by the contract if the plaintiffs had not stopped the shipments. Had the contract been performed according to its terms the 5,000 barrels of cement would have been delivered by May 14th, and the 5,562½ barrels actually required to fill the plaintiffs' contract with the railroad company by May 28th. The defendant furnished in all 3,587½ barrels. There is a balance due the defendant of $1,303.59 for cement actually delivered and not paid for, which he seeks to counterclaim in this action. The plaintiffs claim damages in the amount of $1,462, the excess over the contract price they were required to pay for cement to fill the contract, admitting that the defendant should be credited against this $1,303.59 for cement actually delivered.

It is clear that the plaintiffs refused to receive the 250 barrels of cement a week, as required by the contract, and in that respect broke the contract and became in default and liable to the defendant for any damage he might sustain thereby. It is undoubtedly the rule of law that one party to a contract cannot recover against the other so long as he himself is in default. Bonesteel v. Mayor, 22 N. Y. 162, 170; Windmuller v. Pope, 107 N. Y. 674, 14 N. E. 436.

But the plaintiffs claim that the defendant, by furnishing cement from time to time after March 11th, thereby extended the terms of the contract, and, beginning from that time, was required to furnish the 250 barrels of cement per week until it was all delivered. We do not find any such agreement, and it would practically require a new contract to have that effect. Clark v. Fey, 121 N. Y. 470, 24 N. E. 703.

The only thing that can be claimed as tending to show any such understanding is that the plaintiffs ordered cement from time to time and the defendant filled the orders. But it is to be observed that these orders have no particular reference to the weekly installments mentioned in the contract, but were evidently given for such amounts as the plaintiffs needed. There is some evidence that the defendant stated he considered the contract was still binding, but those statements were made after the defendant's inability to deliver the cement had been demonstrated, and not while the cement was being ordered by plaintiffs and furnished by defendant.

Where one party to a contract requests delay, he cannot defend against the other party because it was granted him. He is estopped from so doing. But here the defendant did not request the delay, and there is no estoppel against him. Thomson v. Poor, 147 N. Y. 402, 410, 42 N. E. 13.

The case at bar is one where the vendee refuses to accept the goods at the times agreed upon for their delivery, but thereafter requests a delivery from time to time of some installments, and the vendor delivers as requested, and then becomes unable to deliver the balance. The vendee has not kept his contract, but became liable from time to time for the goods he actually received, and the vendor, having delivered the goods, is entitled to pay for them only at the contract price. Bailey v. Western Vermont R. R. Co., 18 Barb. 112.

Notwithstanding the vendor's subsequent delivery of certain installments, it is probable that he might still recover any legal damages he sustained by the vendee's refusing the goods at the time mentioned in the contract. Phillips & C. C. Co. v. Seymour, 91 U. S. 646, 23 L. Ed. 341; Brady v. Cassidy, 145 N. Y. 171, 180, 39 N. E. 814; Parke v. Franco-American T. Co., 120 N. Y. 51, 56, 23 N. E. 996.

Permitting performance after the time does not extend the time, but waives a complete performance. The party not in default may, nevertheless, terminate the contract or suffer it to go on and claim damages. Wyckoff v. Taylor, 13 App. Div. 240, 43 N. Y. Supp. 31.

The performance of the contract, according to its terms, having been prevented by the plaintiffs, the most favorable view to them is that the defendant had a reasonable time after request in which to fulfill, if he were still willing to go on with it, and such reasonable time depends upon all the surrounding circumstances. Simmons v. Ocean Causeway, 21 App. Div. 30, 47 N. Y. Supp. 360, and cases cited. Under that rule, the defendant being required to furnish a particular brand of cement which could only be made at one mill, and it being conceded that he used every effort he possibly could to obtain it for the plaintiffs, and it appearing that when the plaintiffs required the cement the mill was unable to furnish it, the defendant should not be held liable for failing to furnish the cement as requested. A plaintiff cannot recover in an action against another for breach of contract, except upon showing that he had performed, or is ready to perform; and if it appears that he, directly or indirectly, prevented the other party from performing, and the default of the other party is primarily due to the act or neglect of plaintiff, then no recovery can be had, but the party prevented from performing in full may recover pro rata. Otherwise the plaintiff would recover the damages flowing from his own acts. Vandegrift v. Cowles Engineering Co., 161 N. Y. 435, 443, 55 N. E. 941, 48 L. R. A. 685; Dolan v. Rodgers, 149 N. Y. 489, 44 N. E. 167.

After the tests were over and the cement accepted, a large amount was delivered in August. The last cash payment made by the plaintiffs was June 13th. That did not include the five car loads which the inspector did not pass and as to which the tests were made. So that in the deal between the parties these five car loads and the cement delivered in August was not paid for, and at the time the plaintiffs notified the defendant that they would not accept more cement, and treated him as violating the contract, they were indebted to the plaintiffs in a large amount for cement previously delivered. The con-

tract provided that upon inspection and acceptance of any lot of cement the purchase price was to be paid. The three car loads. shipped in June and the last two in May, which were at first rejected, were good deliveries under the contract, and, while the two cars in May were nominally rejected, they were in fact used as soon as received and before the tests.

It therefore clearly appears that upon any theory of the case, while the defendant was concededly making deliveries as required, the plaintiffs were indebted to him and still remain indebted to him for cement previously delivered, and in fact several days before the plaintiffs notified the defendant of their termination of the contract for his nonperformance the defendant had demanded $1,000 of them upon account, which was due them and has not been paid.

The plaintiffs, therefore, made the first default in this contract by refusing to accept the cement as provided for by the contract, and such default must prevent a recovery here by them. The defendant having delivered cement, as requested, to the plaintiffs who are in default, is entitled to recover for the cement actually delivered. Aside from the plaintiffs' first default, they failed to pay for different lots of cement as soon as inspected. The defendant is entitled, therefore, to recover judgment upon his counterclaim for $1,303.57, with interest and costs.

Judgment for defendant, with costs.