CHARLES WISSMAN CO. v. HALSTEAD & CO.

(Supreme Court, Appellate Term.  November 12, 1909.)

SALES (§ 62*)—CONTRACT.

    Plaintiff ordered defendant to ship him 200 tongues per week for six months, 100 on Monday and Thursday of each week, to weigh "5½ pounds each and over." Defendants' acceptance was "200 pieces per week" for such period, "average of tongue 5 to 5½, * * * 100 pieces to be delivered Monday and 100 pieces on Thursday of each week," with the added statement that the "largest average tongue * * * will be 5 to 5½." *Held*, that the contract was not an entire one, allowing an average to be taken on all the deliveries as a whole, but that each delivery must be of the average weight.

    [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 171–179; Dec. Dig. § 62.*]

Appeal from Municipal Court, Borough of Manhattan, Ninth District.

Action by the Charles Wissman Company against Halstead & Co. From a judgment for defendants for $128.91, after a trial without a jury, plaintiff appeals. Reversed, and new trial ordered.

Argued before GILDERSLEEVE, P. J., and SEABURY and LEHMAN, JJ.

Emanuel Jacobus (Henry Marx, of counsel), for appellant.

Baldwin, Wadhams, Bacon & Fisher (William H. Wadhams and Marshal C. Bacon, of counsel), for respondents.

GILDERSLEEVE, P. J. The parties made a contract by which defendants were to deliver smoked tongues to plaintiff. A number of pieces were so delivered and accepted between April 1 and June 29, 1908, when one delivery made on the latter day, and consisting of 100 smoked tongues, of the total weight of 483 pounds, was delivered and refused on the ground that they were under weight, and said tongues were returned to defendants, who insisted that the tongues were in accordance with the contract, and, upon plaintiff's refusal to accept them, defendants rescinded the contract. Plaintiff sues to recover for the failure of defendants to complete the contract by delivering 200 pieces per week from April 1, 1908, to October 1, 1908, as required by the contract. Defendants counterclaim for alleged breach by plaintiff.

The defendants stipulated, in the reply letter which forms the contract, that "the largest average tongue * * * will be 5 to 5½ pounds," and that 100 pieces were to be delivered on Monday and 100 pieces on Thursday of each week until the end of the contract. The

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

defendants urge that the contract does not state that no tongue was to weigh less than 5 pounds, but only that the average of the tongues was to be from 5 to 5½ pounds. The defendants also claim that the average of all the tongues delivered up to the time the defendants rescinded the contract was higher than 5 pounds, and that some individual tongues weighed 6 pounds; but, on the other hand, some individual tongues weighed less than 5 pounds. Defendants also point out that the contract does not particularly state that each separate semiweekly delivery of 100 pieces must average from 5 to 5½ pounds, but that the largest average tongue (to be delivered during the period of the contract) was to be from 5 to 5½ pounds. The delivery in question, made on June 29, 1908, of 100 pieces, weighing 483 pounds, was less than an average of from 5 to 5½ pounds per tongue. If the contract was an entire one, a wrongful refusal by the buyer to accept one of the installments would constitute such a breach of the contract as would give to the seller the right to rescind (Ganser v. Weber, 35 Misc. Rep. 304, 71 N. Y. Supp. 773; Van Sickle v. Nester, 34 Hun, 69; Mills v. Weil, 21 App. Div. 492, 47 N. Y. Supp. 585; Canda v. Wick, 100 N. Y. 127, 2 N. E. 381), and would expose the buyer to a liability to the seller for any damage sustained by him through such wrongful refusal to accept the installment (Pitts v. Davey, 40 Misc. Rep. 99, 81 N. Y. Supp. 264). The court below acted on the theory that the contract was an entire one, and that the average weight was to be computed upon all the deliveries made during the term of the contract, not on any particular individual delivery, such as the one in question, and that the average of all deliveries up to and including that of June 29, 1908, was above 5 pounds. Wherefore the court gave judgment dismissing the complaint, and allowing defendants' counterclaim.

The contract in full consists of the two following letters, the first written by plaintiff to defendants, and the second written in reply thereto by defendants to plaintiff. The latter, it will be observed, is also signed by plaintiff.

"March 24, 1908.

"Halstead & Co.: Ship to Charles Wissman, place 233 Fulton street, 200 smoked tongues per week from April 1st to October 1st, 100 on Monday and Thursday of each week, well cured, smoked, and weigh five and one-half pounds each and over, price fourteen.          J. Wissman,

"Beardsall."

"March 25, 1908.

"Mr. Chas. H. Wissman, 233 Fulton Street, New York City—Dear Sir: We herewith acknowledge contract made with you by our Mr. Beardsall for smoked tongues, 200 pieces per week, beginning April 1st and continuing until Oct. 1st. Average of tongue 5 to 5½, at 14¢ per lb., 100 pieces to be delivered on Monday and 100 pieces on Thursday of each week. Mr. Beardsall, we believe, talked with you about tongues averaging 5½ up. Will state that the largest average tongue that we can give you will be 5 to 5½, and we thought it best to make this explanation, to see if you understood as we do. We are writing this acknowledgment in duplicate, and have signed both, and would be pleased if you will sign one and return to us, keeping one for yourself. We thank you for your order and beg to remain,

"Yours truly,                                        Halstead & Co.
"Sales Dept.
"O. G. Thompson.
"J. Wissman."

It appears that plaintiff had returned other deliveries than that of June 29, 1908, on the ground of underweight, and that defendant had accepted and made good by sending other tongues. Defendants' sales manager (Thompson) testified:

"We had been making deliveries, and the great proportion of them were returned, or some parts of the deliveries were returned; and it was so expensive, and it put us in such a bad position to resell the tongues after they were smoked, that it was not a business proposition to continue with them; and, owing to the fact that they rejected tongues which were, in our opinion, all right under the contract, we simply could not serve them. * * *"

We think it was not contemplated by the parties that the deliveries on any particular week might be of tongues averaging less than 5 pounds. If 4½-pound tongues would satisfy the requirements of the contract, why would not 3½-pound tongues, provided that the weight of subsequent deliveries brought up the general average to 5 and 5½ pounds? It is reasonable to assume that plaintiff could not satisfactorily supply its weekly customers with tongues averaging less than 5 pounds. It must be observed that weekly settlements were made. The acts of the defendants, as we have seen, in accepting from time to time returned tongues under 5 pounds in weight, and substituting tongues up to the weight named in the contract, coupled with weekly settlements, tends to support the construction urged by the plaintiff that the contract is not an entire one. It seems to us that the contract was not an entire one, requiring computation to be made upon the entire delivery of all tongues to be delivered during the contract, but that the average should be computed on each delivery. It was not a contract for the sale of a certain entire number of 4,800 tongues, to be shipped in installments or parts, from April 1st to October 1st, but it was a contract for the sale of 200 tongues per week during a certain period of time, 100 to be delivered every Monday and the other 100 tongues to be delivered every Thursday, and to be of an average of from 5 to 5½ pounds per tongue, at 14 cents per pound. The defendants did not perform these conditions, and plaintiff was justified in returning the goods, and in calling upon defendants to deliver goods of the proper weight, and the refusal to do so by the defendants constituted a breach of the contract, and exposed defendants to liability for damages to plaintiff resulting from such breach.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event. All concur.